# JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Federal Trade Commission**, | No. CV 21-8260JVS(KESx) |
| Plaintiff, | |
| vs. | **STIPULATED ORDER FOR PERMANENT INJUNCTION AND JUDGMENT** |
| **Universal Guardian Acceptance, LLC, et al.**, | |
| Defendants. | |

Plaintiff, the Federal Trade Commission ("Commission" or "FTC"), filed its Complaint for Permanent Injunction and Other Relief in this matter, pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b). The Commission and Defendants stipulate to the entry of this Stipulated Order for Permanent Injunction and Judgment ("Order") to resolve all matters in dispute in this action between them, including potential action by the Commission under Section 19(a)(2) of the FTC Act, 15 U.S.C § 57b(a)(2).

THEREFORE, IT IS ORDERED as follows:

## FINDINGS

1. This Court has jurisdiction over this matter.

2. The Complaint charges that Defendants participated in unfair acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45, by providing underwriting, funding, or Account servicing to an enterprise doing business as Online Trading Academy.

3. Defendants neither admit nor deny any of the allegations in the Complaint, except as specifically stated in this Order. Only for purposes of this action, Defendants admit the facts necessary to establish jurisdiction.

4. Defendants waive any claim that they may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and agree to bear their own costs and attorney fees.

5. Defendants and the Commission waive all rights to appeal or otherwise challenge or contest the validity of this Order.

## DEFINITIONS

For the purpose of this Order, the following definitions apply:

A. **"Account"** means an amount recorded as being owed by a consumer(s) for sales on credit by virtue of a retail installment contract or retail installment credit agreement.

B. **"Clear(ly) and Conspicuous(ly)"** means that a required disclosure is difficult to miss (i.e., easily noticeable) and easily understandable by ordinary consumers, including in all of the following ways:

1. In any communication that is solely visual or solely audible, the disclosure must be made through the same means through which the communication is presented. In any communication made through both visual and audible means, such as a television advertisement, the disclosure must be presented simultaneously in both the visual and audible portions of the communication even if the representation requiring the disclosure is made in only one means.

  2. A visual disclosure, by its size, contrast, location, the length of time it appears, and other characteristics, must stand out from any accompanying text or other visual elements so that it is easily noticed, read, and understood.

  3. An audible disclosure, including by telephone or streaming video, must be delivered in a volume, speed, and cadence sufficient for ordinary consumers to easily hear and understand it.

  4. In any communication using an interactive electronic medium, such as the Internet or software, the disclosure must be unavoidable.

  5. The disclosure must use diction and syntax understandable to ordinary consumers and must appear in each language in which the representation that requires the disclosure appears.

  6. The disclosure must comply with these requirements in each medium through which it is received, including all electronic devices and face-to-face communications.

  7. The disclosure must not be contradicted or mitigated by, or inconsistent with, anything else in the communication.

  **8.** When the representation or sales practice targets a specific audience, such as children, the elderly, or the terminally ill, "ordinary consumers" includes reasonable members of that group.

  B. **"Client"** means any Person to whom any Defendant provides underwriting, funding, or Account servicing.

  C. **"Covered Client"** means any Client who (1) offers to sell, sells, promotes, or markets any good or service to consumers using Earnings Claims, or (2) who sells any training, education, coaching, or business opportunity that offers to teach, educate, or coach consumers about improving income, achieving financial gains, making profit, or a return on investment.

  D. **"Covered Client Cancellation"** means the Covered Client's cancellation of an Account being serviced by Defendants at the request of the

purchaser of the good or service (1) within a post-sale grace period permitted by the Client or (2) before a purchaser used the good or service.

  E. **"Covered Client Cancellation Rate"** means the proportion (expressed as a percentage) of Covered Client Cancellations out of the total number of a Covered Client's Accounts being serviced by Defendants.

  F. **"Covered Consumer Account"** means an Account currently owed to any Defendant on an obligation by a consumer who purchased any Online Trading Academy good or service on or before September 11, 2020, including all unpaid interest and fees related to that Account, unless such Account was eligible for the debt-forgiveness offer required under Section IX of the order entered by this Court in *Federal Trade Commission v. OTA Franchise Corp.*, No. 8:20-cv-00287, at Dkt. 267, on September 11, 2020.

  G. **"Corporate Defendants"** means Universal Guardian Acceptance, LLC and Universal Account Services, LLC, and their successors and assigns.

  H. **"Defendants"** means all of the Corporate Defendants individually, collectively, or in any combination.

  I. **"Earnings Claim"** means any representation to a consumer, specific or general, about income, financial gains, percentage gains, profit, net profit, gross profit, or return on investment.

  J. **"Earnings Claim Complaint"** means any communication from a purchaser of a Covered Client's goods or services that indicates a Covered Client may have made false, unsubstantiated, or otherwise misleading Earnings Claims. Earnings Claim Complaints include communications that convey: (a) a purchaser's belief that he or she would experience profit, income, or earnings as a result of using a Covered Client's goods or services, (b) a purchaser's frustration with failing to achieve profit, income, or earnings despite using a Covered Client's goods or services, or (c) a purchaser's referencing a failure to achieve profit,

income, or earnings despite using a Covered Client's goods or services as a reason for not meeting payment obligations.

   K. **"Online Trading Academy"** or **"OTA"** means OTA Franchise Corporation (also doing business as "Online Trading Academy"), Newport Exchange Holdings, Inc. (also doing business as "Online Trading Academy"), NEH Services, Inc. (also doing business as "Online Trading Academy"), and their franchisees, subsidiaries, affiliates, successors, and assigns.

   L. **"Person"** means any natural person, organization, or legal entity, including a corporation, limited liability company, partnership, proprietorship, association, cooperative, governmental subdivision or agency, or any other group or combination acting as an entity.

## ORDER

**I. PROHIBITION AGAINST UNFAIR PRACTICES**

   IT IS ORDERED that Defendants, Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are permanently restrained and enjoined from providing substantial assistance or support (including underwriting, funding, or servicing of Accounts) to any Person that they know or should know is engaged in:

   A. Making false, unsubstantiated, or otherwise misleading Earnings Claims;

   B. Failing to Clearly and Conspicuously disclose all goods and services that are sold in conjunction with the offered good or service, and the total cost to purchase, receive, or use, any goods or services that are the subject of the sales offer;

   C. Failing to Clearly and Conspicuously disclose all material terms and conditions of an offer;

  D. Misrepresenting directly or by implication, any material aspect of the performance, efficacy, nature, or central characteristics of any goods or services; or

  E. Misrepresenting, directly or by implication, any material aspect of the nature or terms of any refund, cancellation, exchange, or repurchase policies.

## II. SCREENING OF PROSPECTIVE COVERED CLIENTS

  IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are permanently restrained and enjoined from providing underwriting, funding, or Account servicing for any prospective Covered Client without first engaging in a screening of the prospective Covered Client to determine whether the prospective Covered Client's business practices are, or are likely to be, deceptive or unfair within the meaning of Section 5 of the FTC Act. Such screening shall include, but not be limited to:

  A. Obtaining and reviewing from each prospective Covered Client the following:

   1. A description of the nature of the prospective Covered Client's business, including describing the nature of the goods and services sold and methods of sale, for which the prospective Covered Client seeks underwriting, funding, or Account servicing;

   2. The names of the principal(s) and controlling Person(s) of the entity and Person(s) with a majority ownership interest in the entity;

   3. A list of all business and trade names, fictitious names, DBAs, and websites under or through which the prospective Covered Client has marketing or intends to market the goods and services for which the prospective Covered Client seeks underwriting, funding, or Account servicing;

   4. All marketing materials (including sales scripts, if any) for each good or service related to the offer for which Defendants would provide the prospective Covered Client with underwriting, funding, or Account servicing;

   5. Each physical address at which the prospective Covered Client will conduct the business(es) identified pursuant to subsection (1) of this Section II.A;

   6. The prospective Covered Client's Client Cancellation Rate for the preceding 12 months;

   7. Copies of any contracts that the prospective Covered Client enters into with purchasers of its goods or services; and

   8. Whether the prospective Covered Client, including the principal(s) and controlling Person(s) of the entity, any Person(s) with a majority ownership interest in the entity, and any corporate name, trade name, fictitious name or aliases under which such Person(s) conduct or have conducted business, has ever been the subject of a complaint filed by the Commission or any other state or federal law enforcement agency;

  B. Taking reasonable steps to assess the accuracy of the information obtained pursuant to Sections II.A of this Order, including reviewing the websites used by the prospective Covered Client to market its goods or services; contacting Better Business Bureaus to gather detailed information, including complaints and other relevant information, regarding the Covered Client; searching publicly available sources for legal actions taken by the Commission or other state or federal law enforcement agencies against the Covered Client. The purpose of such steps is to determine whether the prospective Covered Client is engaged in any of the unfair or deceptive practices listed under Section I.

**III. MONITORING OF COVERED CLIENTS**

  IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly

7

or indirectly, in connection with underwriting, funding, or Account servicing are permanently restrained and enjoined from failing to:

  A. Monitor each Covered Client's transactions and business practices to determine whether the Covered Client is engaged in practices that are deceptive or unfair in violation of Section 5 of the FTC Act. Such monitoring shall include regularly reviewing Covered Clients' websites, regularly reviewing each Covered Client's Covered Client Cancellation Rate and reasons provided for this rate, as well as examining any unusual or suspect transaction patterns, values, and volume;

  B. Calculate and update the Covered Client Cancellation Rate for each Covered Client at least on a monthly basis. For any Client with one or more franchises, the calculation of the Covered Client Cancellation Rate shall be made for each of the Covered Client's individual franchises, and in the aggregate for each Covered Client;

  C. Solicit additional details from consumers regarding Earnings Claim Complaints, including:

    1. Whether, at the time the consumer purchased the Covered Client's good or service, the consumer was under the impression that the consumer would make money as a result of using a Covered Client's goods or services;

    2. If so, the specific details of what the Covered Client said or did that contributed to that impression;

    3. In what manner the consumer's experience has been different from his or her impression at the time of purchase; and

    4. Any other reason the consumer has to suspect that the Covered Client's Earnings Claims were false, misleading, or unsubstantiated.

  D. Document and maintain Earnings Claim Complaints, along with all additional details provided by consumers submitting Earnings Claim Complaints, and all documents reflecting the foregoing, in a complaint log for each Covered Client. When counting Earnings Claim Complaints for purposes of Subsections

III.F and III.G, the following Earnings Claim Complaints may be omitted: (1) Earnings Claim Complaints as to which the consumer has stated that he or she was not under the impression, at the time of purchase, that he or she would make money using the Covered Client's good or service, (2) Earnings Claim Complaints as to which the consumer has stated that he or she has achieved the earnings or profits he or she anticipated achieving, and (3) Earnings Claims Complaints received prior to the most recent investigation under Subsection III.F;

  E. Provide each Covered Client with a copy of all Earnings Claim Complaints regarding such Covered Client, as well as any additional details provided by consumers submitting such complaints, within 5 days of receiving them, and request a response from the Covered Client;

  F. Immediately conduct a reasonable investigation of the cause of Covered Client Cancellation Rates and Earnings Claim Complaints (including verifying and updating the truth and accuracy of information gathered in compliance with Section II of this Order and any other advertising of the Covered Client; confirming that the Covered Client has obtained required consumer authorizations for the transactions; contacting Better Business Bureaus to gather detailed information, including complaints and other relevant information, regarding the Covered Client; reviewing the Internet websites used by the Covered Client to market its goods and services; searching publicly available sources for legal actions taken by the Commission or other state or federal law enforcement agencies against the Covered Client; and conducting "test" shopping to determine the Covered Client's sales practices, where possible) for:

  5. Any Covered Client whose Covered Client Cancellation Rate exceeds five percent (5%) and whose total number of Covered Client Cancellations exceeds fifty (50) in any two consecutive months;

  6. Any Covered Client for which three (3) Earnings Claim Complaints are received in any thirty-day period; and

1    7.   Any Covered Client for which the number of Earnings Claim
2 Complaints received exceeds ten (10);
3    G.   Failing to stop underwriting, funding, or Account servicing for any
4 Covered Client investigated pursuant to Subsection F, above, within 60 days of
5 commencing the investigation, unless Defendants draft a written report
6 establishing facts that demonstrate, by clear and convincing evidence, that the
7 Covered Client's business practices related to the offer(s) for which Defendants
8 provide underwriting, funding, or Account servicing are not deceptive or unfair in
9 violation of Section 5 of the FTC Act.

**IV.   CONSUMER INDEBTEDNESS RELIEF**

   IT IS FURTHER ORDERED that Defendant UGA shall:

   A.   Within 7 days of entry of this Order, notify each consumer with a Covered Consumer Account that the consumer may elect to require Defendant Universal Guardian Acceptance, LLC to forgive the consumer's Covered Consumer Account, using the notification provided as Attachment A to this Order ("Notification").  Defendant Universal Guardian Acceptance, LLC shall send the Notification:

   1.   By electronic mail to the most recent electronic mail address of the consumer known to the Defendants, unless such consumer has previously affirmatively opted out of electronic mail communications from Defendants;

   2.   By United States Postal Service Priority Mail, to the most recent residential address of the consumer known to the Defendants; and

   3.   For consumers who have affirmatively opted out of electronic mail communications from Defendants, by Federal Express or certified mail with return receipt.

   4.   The outside of the envelope and the subject of the email shall include the statement: "Cancel Your Online Trading Academy Debt."

B.  Defendants shall forgive all Covered Consumer Accounts owed by any consumer who, within 45 days of Defendants' mailing of the Notification (the "Election Period"), requests Account forgiveness from Corporate Defendants by email or telephone (a "Forgiveness Elected Covered Consumer Account").

C.  Within 7 days of entry of this Order, Defendants shall notify any collection agency or other third party collecting Covered Consumer Accounts to cease such collection efforts, and Defendants shall not engage in active collections efforts as to Covered Consumer Accounts for the Election Period.  Nothing in this Agreement shall prevent Defendants or their agents from sending invoices in the ordinary course of business or receiving voluntary payments on a Covered Consumer Account during the Election Period. After the expiration of the Election Period, nothing in this Agreement shall prevent Defendants or their agents from continuing to service or collect all Covered Consumer Accounts who did not make a timely forgiveness request.

D.  To the extent Defendants receive any payment for a Forgiveness Elected Covered Consumer Account within the Election Period, Defendants shall, within 14 days of the expiration of the Election Period, refund the full payment amount to the consumer who made the timely forgiveness request.

E.  For any Forgiveness Elected Covered Consumer Account that has been reported to a Consumer Reporting Agency ("CRA"), Defendants shall, within 14 days of expiration of the Election Period request that each CRA delete the forgiven Covered Consumer Account from the consumer's credit reporting file.

F.  Defendants shall, within 14 days of sending the Notification to the applicable consumers pursuant to Subsection IV.A above, provide the FTC with a signed declaration identifying the name of each consumer to whom they sent a Notification, including: (i) mailing address; (ii) email address; (iii) telephone number; (iv) the method or methods of notification; and (v) whether any electronically or physically mailed Notification was returned undelivered.

G. Defendants shall, within 14 days after expiration of the Election Period, provide the FTC with a signed declaration identifying each Forgiveness Elected Covered Consumer Account and the amount forgiven as to each such consumer. In the same declaration, Defendants shall also identify any additional (i.e., not previously identified in the declaration provided to the FTC pursuant to Subsection IV.F) electronically or physically mailed Notification that was returned undelivered.

## V. COOPERATION

IT IS FURTHER ORDERED that Defendants must fully cooperate with representatives of the Commission in this case and in any investigation related to or associated with the transactions or the occurrences that are the subject of the Complaint. Defendants must provide truthful and complete information, evidence, and testimony. Defendants must cause Defendants' officers, employees, representatives, or agents to appear for interviews, discovery, hearings, trials, and any other proceedings that a Commission representative may reasonably request upon 5 days written notice, or other reasonable notice, at such places and times as a Commission representative may designate, without the service of a subpoena.

## VI. ORDER ACKNOWLEDGEMENTS

IT IS FURTHER ORDERED that Defendants obtain acknowledgments of receipt of this Order:

A. Each Defendant, within 7 days of entry of this Order, must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B. For 5 years after entry of this Order, each Defendant must deliver a copy of this Order to: (1) all principals, officers, directors, and LLC managers and members; (2) all employees having managerial responsibilities and all agents and representatives who participate in conduct related to the subject matter of the Order; and (3) any business entity resulting from any change in structure as set

forth in the Section titled Compliance Reporting.  Delivery must occur within 7 days of entry of this Order for current personnel.  For all others, delivery must occur before they assume their responsibilities.

  C. From each individual or entity to which a Defendant delivered a copy of this Order, that Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

## VII. COMPLIANCE REPORTING

IT IS FURTHER ORDERED that Defendants make timely submissions to the Commission:

  A. One year after entry of this Order, each Defendant must submit a compliance report, sworn under penalty of perjury:

  1. Each Defendant must:  (a) identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the Commission may use to communicate with Defendant; (b) identify all of that Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the activities of each business, including the services offered and a list of Covered Clients served, and the involvement of any other Defendant; (d) describe in detail whether and how that Defendant is in compliance with each Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

  B. For 10 years after entry of this Order, each Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

  2. Each Defendant must report any change in:  (a) any designated point of contact; or (b) the structure of any entity that Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including:  creation, merger, sale, or dissolution of the

entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

  C. Each Defendant must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against such Defendant within 14 days of its filing.

  D. Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on: _____" and supplying the date, signatory's full name, title (if applicable), and signature.

  E. Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580. The subject line must begin: FTC v. Universal Guardian Acceptance, LLC, et al., [X number].

**VIII. RECORDKEEPING**

  IT IS FURTHER ORDERED that Defendants must create certain records for 10 years after entry of the Order and retain each such record for 5 years. Specifically, each Defendant must create and retain the following records:

  A. Accounting records showing the revenues from all goods or services sold;

  B. Personnel records showing, for each person providing services, whether as an employee or otherwise, that person's: name; addresses; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

  C. Records of all Earnings Claim Complaints, whether received directly or indirectly, such as through a third party, and any response;

  D. Responses of Covered Clients to Defendants' requests pursuant to Section III.E.

  E. All records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission.

## IX. COMPLIANCE MONITORING

  IT IS FURTHER ORDERED that, for the purpose of monitoring Defendants' compliance with this Order:

  A. Within 14 days of receipt of a written request from a representative of the Commission each Defendant must: submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying. The Commission is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

  B. For matters concerning this Order, the Commission is authorized to communicate directly with each Defendant. Defendant must permit representatives of the Commission to interview any employee or other person affiliated with any Defendant who has agreed to such an interview. The person interviewed may have counsel present.

  C. The Commission may use all other lawful means, including posing, through its representatives as consumers, suppliers, or other individuals or entities, to Defendants or any individual or entity affiliated with Defendants, without the necessity of identification or prior notice. Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

X.     **RETENTION OF JURISDICTION**

      IT IS FURTHER ORDERED that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

**Dated: October 22, 2021**

                                              **United States District Judge**
                                                    **James V Selna**

**ATTACHMENT A – Account Forgiveness Notification**

[DEFENDANTS' LETTERHEAD]

[Date]

**Subject Line of Notice:** You Can Cancel Your Online Trading Academy Debt.

Dear [consumer's name]:

Records show that you directly financed the purchase of Online Trading Academy's (OTA's) training program and OTA transferred your remaining balance to our company, Universal Guardian Acceptance. We're writing to let you know that you can choose to cancel your outstanding balance with us.

**Why am I eligible for cancellation?** In February 2020, the Federal Trade Commission sued OTA for deceiving people about its training programs. OTA settled the lawsuit and gave some customers who financed the training program through OTA the option to cancel their debt. We are now giving you the option to cancel your OTA-related debt with us.

**How do I cancel my balance?**
- Email us at cancel@ugafinance.com or call us at 1-833-669-2855.
- You must contact us within 45 days of the date on this letter.

**What happens if I choose to cancel my balance?**
- You won't have to pay off your outstanding balance.
- We will ask the credit bureaus to delete the debt from your credit report.
- You won't be able to take classes at OTA centers.
- You won't have access to OTA's online classes, products, programs, or benefits.
- You will still owe other debts you may have incurred to pay for OTA's training, like on a credit card or with a consumer loan.

If you have questions, please email us at questions@ugafinance.com or call us at 1-833-669-2855.

For more information about OTA's settlement with the Federal Trade Commission, see the FAQ's about OTA at ftc.gov/OTA.

[Complimentary close]

[Defendant executive name]